(2008)
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
Matthew E. KOPSKY and Ronald W. Davis, Defendants.
No. 4:07-CV-00379-RWS.
United States District Court, E.D. Missouri, Eastern Division.
March 14, 2008.
As Amended March 21, 2008.

MEMORANDUM AND ORDER
RODNEY W. SIPPEL, District Judge.
The Securities and Exchange Commission brought this action for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 against Defendants Ronald W. Davis and Matthew E. Kopsky. Defendant Ronald W. Davis filed a motion to strike Plaintiff's demand for a jury trial. He was later joined in his motion by co-defendant Matthew E. Kopsky. I will deny Defendants' motion because the Seventh Amendment entitles either party to demand a jury trial in an action for civil penalties. As a result, the Securities and Exchange Commission is entitled to a jury trial in this case.

I. Background

The SEC brought an action against Kopsky and Davis, alleging Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5. Davis, one of the four highest-ranking officers at Engineered Support Systems, Inc., allegedly passed on nonpublic earnings information to Kopsky before each earnings announcement was made during the first three quarters of 2003. Kopsky allegedly used this information to make substantial profits for himself and his clients by purchasing stock before the information was released and then selling the stock shortly after the public earnings announcements, when the stocks' value had increased by more than ten percent.
In its complaint, the SEC requested the Court permanently restrain and enjoin Defendants from further violations, order Defendants to disgorge profits made from the trades of Engineered Support securities, and pay civil, penalties pursuant to Section 21A of the Exchange Act. In its complaint, the SEC also demanded a jury trial pursuant to Rule 39 of the Federal Rules of Civil Procedure. Davis filed a motion to strike the SEC's demand for a jury trial. Kopsky later joined in Davis' motion.

II. Legal Standards

The parties agree that there is no statutory right to a jury trial. As such, a jury trial is only available if such right can be derived from the Seventh Amendment. Fed.R.Civ.P. 38(a). The Seventh Amendment states, Tin Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..." U.S. Const. amend. VII. The Supreme Court has "construed this language to require a jury trial on the merits in those actions that are analogous to `Suits at common law.' Prior to the Amendment's adoption, a jury trial was customary in suits brought in the English law courts." Tull v. United States, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (emphasis in the original).
The Supreme Court has set out a two-part inquiry "to determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." Id. First, courts "must compare the statutory action' to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Id. Second, courts must "examine the remedy sought and determine whether it is legal or equitable in nature." Id. at 417-18, 107 S.Ct. 1831.

III. Analysis

A. Tull Analysis
Although the issue of whether a government entity as a plaintiff in a civil suit is entitled to demand a jury trial has not been directly addressed by the United States Supreme Court or the Eighth Circuit Court of Appeals, I find that the SEC is entitled to demand to jury trial in this case.
In Tull, the Supreme Court addressed the jury trial question in an action for civil penalties and injunctive relief under the Clean Water Act. Id. at 414, 107 S.Ct. 1831. Although it was the defendant demanding the jury trial in that case, the Supreme Court did not distinguish between the identities of the parties when applying its two-part test. Id. at 417-18, 107 S.Ct. 1831. Instead, the Court found that "[p]rior to the enactment of the Seventh Amendment, English courts had held that a civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." Id. at 418, 107 S.Ct. 1831. "After the adoption of the Seventh Amendment, federal courts followed this English common law in treating the civil penalty suit as a particular type of an action in debt, requiring a jury trial." Id. The Supreme Court thus found that "[a]ctions by the Government to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring a trial by jury." Id. at 418-19, 107 S.Ct. 1831.
In assessing the second part of, the Tull test, the Court found that a "civil penalty was a type of remedy at common law that could only be enforced in courts of law. Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." Id. at 422, 107 S.Ct. 1831. In this assessment, the Court gave particular importance to the fact that the monies assessed against the defendant were "intended not simply to disgorge profits but also to impose punishment." Id. at 423, 107 S.Ct. 1831.
In the case before me, the Tull two-part test is satisfied by the nature of the relief requested by the SEC. First, in Tull, the Court held that a civil penalty is analogous to an action in debt that was heard in the English courts of law. In its complaint, the SEC has requested the imposition of civil penalties under Section 21A of the Securities Exchange Act of 1934, in addition to the equitable remedies of injunction and disgorgement. Second, Tull requires inquiry into whether the relief requested is legal or equitable in nature. As the Court found in Tull, civil penalties imposed as a fine rather than mere disgorgement are unquestionably legal remedies for which there is a Seventh Amendment right to a jury trial.

B. The Party Demanding a Jury Trial is Irrelevant
Defendants attach great importance to the notion that the Court in Tull was addressing a defendant's demand for a jury trial, rather than a demand from the government-plaintiff as here. However, neither in Tull nor in any other case has the Supreme Court ever held that the party's status as plaintiff or defendant was relevant to the Seventh Amendment inquiry. In fact, in a case involving a civil claim for violation of the Civil Rights Act of 1968, the Supreme Court stated that "we think it is clear that the Seventh Amendment entitles either party to demand a jury trial in an action for damages in the federal courts under [the Civil Rights Act]." Curtis v. Loether, 415 U.S. 189, 192, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). There is no reason to think the Court would not apply this same rationale to a legal action for civil penalties and allow either party  including a government plaintiff  to make a demand for a jury trial. See id. at 195, 94 S.Ct. 1005 ("[W]hen Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.")[1]

C. Limitations on the Seventh Amendment
Defendants also attach great importance to the fact that government-plaintiffs have been denied a right to a jury trial on several occasions in the context of land condemnation proceedings. See Sykes v. United States, 392 F.2d 735 (8th Cir.1968); United States v. Chamberlain Wholesale Grocery Co., 226 F.2d 492 (8th Cir.1955); United States v. Griffin, 14 F.2d 326 (W.D.Va.1926). However, these cases are distinguishable from the instant case. In the Eighth Circuit cases, jury trials were denied because Rule 71(A)(h) of the Federal Rules of Civil Procedure calls for "broad discretion to be vested in the District Court to choose between the use Of juries or of commissioners in the condemnation cases brought before them." Sykes, 392 F.2d at 740. In the Eighth Circuit, this rule was applied to both the United States in Chamberlain and the owner of the condemned property in Sykes. In United States v. Griffin, a case cited by Defendants, the court found Congress waived the Government's right to a jury trial, finding that "by the act of 1888 (25 Stat. 357) Congress has waived the government's right to jury trials in condemnation cases in all of those states in which the state procedure in like causes does not authorize the use of common-law juries." Griffin, 14 F.2d at 327. This land condemnation analysis is not what Defendants would like us to believe  a justification for denying the government-plaintiff a jury trial. Rather, it demonstrates a specific situation where the courts have broad discretion to choose whether or not to allow a jury trial. I have no such discretion in this case.

D. Other Considerations
The SEC argues that the Seventh Amendment's language is party-neutral on its face. The Third Circuit, addressing the issue of a government-plaintiff s right to a jury trial, emphasized that "[b]y its terms, the [Seventh] amendment is not restricted to citizens, but preserves the right for those who enjoyed in previously." Equal Employment Opportunity Comm'n v. Corry Jamestown Corp., 719 F.2d 1219, 1224 (3d Cir.1983). This is a sharp contrast to the Sixth Amendment, which clearly states only the "accused" has a constitutional right to a jury trial. U.S. Const. amend VI. However, the Supreme Court has held that the government has a right to demand a jury trial despite a waiver by a defendant of his Sixth Amendment rights. Singer v. United States, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Even if the defendant does not a want a jury trial, the government may demand one. This result does not harm the defendant because "the result is simply that the defendant is subject to an impartial trial by jury-the very thing that the Constitution guarantees him." Id. The government, acting as a litigant, has a "legitimate interest" in demanding jury trials, despite the Sixth Amendment's facial language giving that right only to the "accused." Id. In the Seventh Amendment context, where the Amendment prescribes a general right to jury trial in civil disputes, either party, including a government-plaintiff, is entitled to request a jury trial. The Supreme Court has clearly found that even in the face of more restrictive language, a party, as h litigant in federal court, has a legitimate interest in requesting a jury trial. Defendants' attempts to minimize this clear prioritization of jury trials do not survive in the face of the guidance provided by the Supreme Court in other contexts.
It is clear that Eighth Circuit jurisprudence emphasizes the right to request a jury trial as a fundamental right. The Eighth Circuit has on five separate occasions quoted Dimick v. Schiedt, stating "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with utmost care." Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935). See also Corpus v. Bennett, 430 F.3d 912, 918 (8th Cir.2005); Kampa v. White Consol. Indus., Inc., 115 F.3d 585, 586 (8th Cir.1997) (Bright, J., dissenting); Cass County Music Co. v. C.H.L.R., 88 F.3d 635, 644 (8th Cir.1996); Curry v. Pyramid Life Ins. Co., 271 F.2d 1, 6 (8th Cir.1959); Milprint, Inc. v. Donaldson Chocolate Co., 222 F.2d 898, 901 (8th Cir. 1955). In addition, the Eighth Circuit has acknowledged that "at common law a sovereign likely had a right to a jury in a contract action with a private party." Entergy Ark. v. Neb., 358 F.3d 528, 543 (8th Cir.2004) (citing Standard Oil Co. of Cal., 738 F.2d at 1028). Citing Standard Oil Co., the Ninth Circuit case finding a state government right to a jury trial, favorably in this context indicates that the Eighth Circuit endorses the idea that a government-plaintiff can demand a jury trial in actions against individuals.
I will deny Defendants' Motion to Strike Plaintiff's Demand for a Jury Trial.
Accordingly,
IT IS HEREBY ORDERED that Defendants' Motion to Strike Plaintiff's Demand for a Jury Trial[# 29] is DENIED.
NOTES
[1] Defendants have argued that the identity of the party is relevant to the Tull inquiry and that if I were to consider Plaintiff's government identity, I would find that government-plaintiffs are not entitled to a jury trial under the Seventh Amendment. However, the Ninth Circuit has addressed this issue in the context of a state's right to demand a jury trial and included in the second part of the Tull inquiry an assessment of whether the English sovereign, the party analogous to states in 1791 England, was entitled to demand to jury trial at that time. Standard Oil Co. of Cal. v. Ariz., 738 F.2d 1021 (9th Cir. 1984). The court found that "[t]here are many cases, before and after 1791, where the crown brought suit before a jury." Id. at 1028 (citing The King v. Cotton, Eng. Rep. 729 (1751), The King v. Marsh, 145 Eng. Rep. 842 (1751), The King v. Humphery, 148 Eng. Rep. 371 (1824), Rex v. Peto, 148 Eng. Rep. 577 (1826)). It is irrelevant that, as Defendants argue, it is "unclear whether these cases were brought in the law courts as a matter of royal right or rather as a matter of custom, knowing that the defendant had a right to demand a jury trial and would invariably do so." Defendant Motion to Strike Plaintiff's Demand for a Jury Trial, pp. 4-5. Instead, Standard Oil clearly demonstrates that if any additional analysis into the identity of the parties is required, then without question, the crown was entitled to bring suit in courts of law, where jury trials occurred in 1791.