## C. RONALD DAVIS, INDIVIDUALLY AND AS TRUSTEE FOR THE HEIRS OF REBECCA DAVIS, v. ARLENE LIESENFELD.

240 N. W. 2d 548.

March 26, 1976—Nos. 45661, 45688.

*Berens, Rodenberg, O'Connor & Stoltzfus* and *R. T. Rodenberg,* for appellant.

*Kelly & O'Leary* and *J. Brian O'Leary,* for respondent.

Heard before Rogosheske, Yetka, and Amdahl, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

The trial of this action to recover damages for the death by wrongful act of Rebecca Davis, age 18, by her husband and sole beneficiary, C. Ronald Davis, age 27, as trustee, resulted in the jury's special verdict finding defendant solely negligent and plaintiff entitled to $76,300 damages. Defendant appeals from a denial of her post-trial motions and the judgment, alleging (1) excessive damages, essentially because of the trustee-husband's intention of remarrying shortly after the trial, proof of which was ruled inadmissible; (2) misconduct during final argument of plaintiff's counsel; and (3) inadequate and improper jury instructions. We conclude that the award is not excessive and that no prejudicial trial errors occurred and accordingly affirm.

On September 28, 1973, at about 10 a. m., a collision occurred in a level intersection free of obstructions to vision in rural Brown County between a northbound automobile operated by defendant, Arlene Liesenfeld, and a westbound automobile operated by Rebecca Davis, as a result of which the latter died. The east-west road was a blacktop road and the north-south road was a gravel road. Entry to the blacktop road was protected by

a stop sign. Defendant drove past the stop sign without stopping as she entered the intersection. Because of a psychomotor seizure just before the collision, defendant has no recollection of seeing decedent's vehicle or, indeed, of the accident. The speeds of both vehicles were estimated by an eyewitness at 50 miles per hour.

■ The trial court did not find the award of $76,300 excessive, and neither do we. Kruger v. Knutson, 261 Minn. 144, 154, 111 N. W. 2d 526, 533 (1961). Bearing in mind the jury's unawareness of the surviving husband's intention to remarry, we share the trial judge's reason for not interfering with the award when he said:

"The jury verdict was substantial but within its prerogatives. No one can better determine the amount of loss by the death of a Brown County housewife than a representative Brown County jury. The Court lacks competence by which to make a different evaluation. Viewing the record most favorably toward the verdict, this Court lacks basis upon which to interfere with the result."

■ Defendant argues that the jury in assessing plaintiff's damages should have been permitted to know of plaintiff's intention to remarry at the time of trial. In Lorberbaum v. Christopher, 198 Minn. 289, 269 N. W. 646 (1936), we held that the trial court erred in admitting evidence of plaintiff's remarriage in mitigation of damages in an action for death by wrongful act. While we found this error to be harmless in the special circumstances of that case, we today affirm our adherence to the rule followed in the majority of American jurisdictions that the remarriage of the surviving spouse, much less an intention to do so or the possibility thereof, is not relevant to the issue of damages recoverable for the death by wrongful act of the deceased spouse. See, Annotation, 87 A. L. R. 2d 252. The trial judge was correct, therefore, in excluding evidence of plaintiff's intention to remarry at the time of trial.

We follow the majority rule because we are persuaded that

since the cause of action arises at the time of the decedent's death the measure of damages should be determined according to the circumstances at the time of the death. Murphy v. Barlow Realty Co. 214 Minn. 64, 74, 7 N. W. 2d 684, 690 (1943). The rule allowing mitigation of damages on account of the surviving spouse's remarriage is, we believe, unsound because any comparison of the prospective earnings, services, and contributions of the deceased spouse with those of the new spouse is too speculative to be properly ascertainable by a jury. We reject the assumption on which such a rule must necessarily rest that spouses, like machines, are fungible and hence replaceable. The rule urged by defendant, moreover, might well have the unintended effect of dissuading surviving spouses from considering remarriage and thus would conflict with the strong public policy favoring the freedom of all adult persons to marry when and whom they wish.

Defendant asserts that plaintiff's counsel committed reversible error when in closing argument he allegedly invited the jury to personally place themselves in the position of plaintiff and measure his loss in that manner. While we have in the past condemned the use of such a jury argument, Colgan v. Raymond, 275 Minn. 219, 146 N. W. 2d 530 (1966), we agree with the trial judge that, if read in context, the ambiguous remarks made by plaintiff's counsel in this case do not constitute a resort to this disfavored argument. Any potential prejudice in this ambiguous remark by counsel was further diminished, moreover, by the judge's cautionary instruction to the jury on this matter. See, Annotation, 70 A. L. R. 2d 935, 950.

■ Finally, defendant contends that the pertinent part of the reduced-speed statute, Minn. St. 169.14, subds. 1, 3, should have been read to the jury. [1] While the application of the reduced-

---

[1] Minn. St. 169.14, subds. 1, 3, provide: "Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, ve-

speed statute to a through-highway driver approaching the hazard of a driver entering from a side road often poses a difficult problem for trial judges, we believe that where such claim is part of the defense theory and there is evidence to support an inference that the through-highway driver should have reduced speed the better practice is to include the statute in the jury instructions. See, Norton v. Nelson, 236 Minn. 237, 244, 53 N. W. 2d 31, 35 (1952); Koenigs v. Werner, 269 Minn. 530, 533, 134 N. W. 2d 301, 303 (1964). Thus in this case the court could have read the statute to the jury. However, we think no prejudice resulted, for the jury could not find a reduced-speed statutory violation without first finding that the through-highway driver was negligent at least as to lookout, a claim submitted to, and rejected by, the jury. See, Schleuder v. Soltow, 239 Minn. 453, 458, 59 N. W. 2d 320, 324 (1953). Unless decedent, the through-highway driver, was negligent in failing to see defendant's car approaching from the side road and in failing to realize that its approach posed a special hazard, she was under no duty to reduce her speed. In other words, even if the trial judge had included the reduced-speed statute in his instructions and properly cautioned the jury as to its limited application under the facts of this case, the defense would have received no significant support for its jury argument that decedent driver was contributorily negligent. Cf. Satter v. Turner, 251 Minn. 1, 86 N. W. 2d 85 (1957).

Affirmed.

---

hicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\* \* \* \* \*

"Subd. 3. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."