Here, the district court was in "a much better position than we are to pass upon [this new-trial] question." Brannan , 64 N.W.2d at 761. And we are unable to say on this record that the district court abused its discretion. Dr. Wengler's testimony was not impeached or contradicted, he was fully aware of the previous shoulder complaints, and his unequivocal testimony was that respondent suffered a permanent injury as a result of the collision. Second, this testimony, coupled with an understanding that "direct cause" does not necessarily mean sole cause, supports the conclusion that respondent suffered a permanent injury as a direct result of the accident. Finally, and aside from respondent's shoulder injury, it appears from this record that the district court would be free to conclude that the first jury's verdict could not stand because appellants offered no evidence to render either improbable or inconsistent Dr. Wengler's testimony concerning permanent injuries to respondent's left hand and biceps.
The district court did not abuse its discretion in granting a new trial on damages.
III. The district court erroneously interpreted and applied Minn. Stat. § 65B.51, subd. 1, requiring reversal and remand.
Appellants argue that the district court erred when it failed to offset from the verdict $ 23,000 in no-fault benefits paid to or on behalf of respondent. The question on appeal is one of statutory interpretation, which we review de novo. Ouradnik v. Ouradnik , 912 N.W.2d 674, 676 (Minn. 2018).
In a negligence action arising out of a motor-vehicle accident, the district court is required to deduct basic economic loss benefits from any verdict. "With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle ... the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable ...." Minn. Stat. § 65B.51, subd. 1 (emphasis added).
Here, respondent received $ 23,000 in no-fault benefits from Farmers Insurance Group, his no-fault carrier. The district court was required by statute to deduct this amount from respondent's *301 award. The district court declined to do so because it determined that Farmers could assert a subrogation claim to recover this amount. Had Farmers been able to assert a subrogation interest, the district court would not have been required to deduct the benefits from respondent's award, but that is not the case here.[6]
Subrogation for no-fault benefits paid to or on behalf of an injured person is governed exclusively by statute. See Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n , 538 N.W.2d 692, 695 (Minn. 1995) ("[T]he [No-Fault] Act has replaced the no-fault insurer's common law rights to subrogation and indemnity with very limited statutory rights."). Subrogation is only permitted under the no-fault statute if the insured's action is based upon negligence in another state, or arises from claims other than negligence in the maintenance, use, or operation of a motor vehicle. Minn. Stat. § 65B.53 (2018).
The district court seems to have reasoned that allowing Farmers to assert a subrogation interest would be good policy because it is consistent with the policy of the no-fault act to allow Farmers to recover directly from its insured and would also avoid the time and expense of a separate arbitration between Farmers and the League of Minnesota Cities, which insured the city. It is not for the courts to apply policy considerations when the law is clear. See Hickok v. Margolis , 221 Minn. 480, 22 N.W.2d 850, 852 (1946) ("Courts have nothing to do with the wisdom or expediency of statutes. The remedy for unwise or inexpedient legislation is political and not judicial."); see also LaChapelle v. Mitten , 607 N.W.2d 151, 159 (Minn. App. 2000) (explaining that when a statute is clear, the court need not, and cannot, look beyond its plain language and rejecting appellant's policy arguments), review denied (Minn. May 16, 2000).
Respondent's action here is plainly based upon negligence in the operation of a motor vehicle in the state of Minnesota, an action in which a subrogation interest has not been available for over 40 years. See e.g. , Note, Subrogation and Indemnity Rights Under the Minnesota No-Fault Automobile Insurance Act , 4 Wm. Mitchell L. Rev. 119, 134-35 (1978) (explaining that the legislature repealed the right of subrogation upon institution of a civil action in 1976 amendments to the no-fault act, other than for accidents occurring in another state or when an insured's claim is based upon an intentional tort or statutory liability); Paul F. McEllistrem, No-Fault Benefits: An Overview at 23-39, in Minnesota Motor Vehicle Accident Deskbook (5th ed. Minn. CLE 2014 and 2018 update) (explaining that, since 1977, no-fault carriers do not have any right of subrogation except for (1) when the accident occurs out of state, or (2) when the claim is based on intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle); Theodore J. Smetak et al., The Minnesota Motor Vehicle Insurance Manual 183 (3d ed. 2000) (explaining that subrogation is only permitted if the insured's *302 action is based upon negligence in another state, or claims other than negligence in the use of a motor vehicle). The district court was required to apply the offset provision in Minn. Stat. § 65B.51, subd. 1, and deduct $ 23,000 from respondent's award. Farmers has no right of subrogation.
Section 65B.53, subdivision 1, of the no-fault act allows a reparation obligor (Farmers, in this case) paying economic loss benefits to seek indemnity from the insurer of a negligently operated commercial vehicle. Minn. Stat. § 65B.53, subd. 1. Respondent argued to the district court that this section allows Farmers the option of either seeking indemnity from appellants' insurer or asserting a subrogation interest in respondent's award. Appellants are correct that indemnity is Farmers' exclusive means to recover what it paid.
The district court rejected appellants' argument based on Langenberger v. Dahl , and quoted the following portion: "The trial court's determination, that subrogation is only available to a reparation obligor where indemnification is not, is incorrect." 329 N.W.2d 69, 71 (Minn. 1983). The district court reasoned that Langenberger rejected appellants' argument that the right of indemnity set forth in Minn. Stat. § 65B.53, subd. 1, precludes an insurer from asserting a subrogation interest in an insured's recovery. Noting that Langenberger has not been overruled, the district court followed it and concluded that Farmers is entitled to a subrogation interest.
Although it is true that Langenberger has not been expressly overruled, the supreme court in that case was interpreting the no-fault act as it was originally enacted in 1974. See 1974 Minn. Laws ch. 408, § 13, at 776. In Langenberger , the subject automobile accident occurred in 1976, before the no-fault act was amended and while the act still provided a right of subrogation for accidents involving commercial vehicles. 329 N.W.2d at 69, 70 n.1. As the Langenberger court recognized, "[t]he legislature apparently decided that the offset provision was sufficient to accomplish the readjustment of losses among reparation obligors responsible for the payment of basic economic loss benefits when it repealed the right of subrogation in cases covered by § 65B.51, subd. 1, in 1977 ." Id. at 72 (emphasis added) (citing 1977 Minn. Laws ch. 266, § 4, at 438-39). The supreme court continued, "The original act which controls the disposition of this case, however, stated in the last sentence of § 65B.51, subd. 1, that '[t]his subdivision shall not bar subrogation and indemnity recoveries under section 65B.53, subdivisions 1 and 2.' " Id. at 72-73 (quoting Minn. Stat. § 65B.51, subd. 1 (1974) ). Langenberger is still good law for pre-1977 motor-vehicle accidents. It has no application in a case such as this, as the supreme court expressly recognized.
The district court erroneously concluded that Farmers could assert a subrogation interest here. The right to subrogation in motor-vehicle litigation concerning personal-injury claims exists only where provided by statute, and it matters not whether allowing Farmers to assert a subrogation interest would be good policy. Metro. Prop. & Cas. Ins. Co. , 538 N.W.2d at 695. It is also irrelevant whether the time and expense of arbitration would be avoided by allowing Farmers to subrogate. "The right of indemnity provided in subdivision 1 shall be enforceable only through mandatory good faith and binding arbitration procedures established by the rule of the commissioner of commerce." Minn. Stat. § 65B.53, subd. 4 (emphasis added). The right of indemnity is owned by the no-fault insurer and must be asserted against the *303 defendant's insurer.[7] The fact that respondent's insurer may seek indemnity does not create a right to subrogation that has been modified by the no-fault statute.
The district court erred by declining to offset respondent's award in the second jury trial by the $ 23,000 respondent received in no-fault benefits from Farmers. We therefore reverse and remand with instructions to apply that statutory offset.
IV. We remand to the district court to redetermine the award of costs, disbursements, and interest.
Appellants argue that the district court abused its discretion when it awarded respondent $ 2,500 for a medical evaluation and erred in determining that prejudgment interest runs from when the action was commenced and not from when respondent's counsel gave written notice of the claim. Respondent agrees on appeal that the $ 2,500 cost for the medical evaluation was not properly taxable, and also agrees that prejudgment interest should have accrued from the date that appellants suggest, May 29, 2014.
On remand, the district court is instructed to recompute the award after properly deducting the no-fault benefits paid by Farmers to or on behalf of respondent, deducting the $ 2,500 medical evaluation from the taxable costs and disbursements, and computing interest from May 29, 2014.
DECISION
The district court properly determined that appellants were not entitled to immunity under Minn. Stat. § 466.03, subd. 4(a), and acted within its discretion when it granted respondent's motion for a new trial on damages. But the district court erred by failing to deduct from the verdict the amount of no-fault benefits paid by respondent's no-fault insurer to or on behalf of respondent. We therefore reverse the judgment and remand to the district court to properly apply the no-fault offset, to effectuate the parties' agreement concerning costs and disbursements properly taxable, and to recompute the total award with interest from May 29, 2014.
Affirmed in part, reversed in part, and remanded.

The more general collateral-source statute, Minn. Stat. § 548.251 (2018), establishes procedures for a defendant to request offsets from a jury verdict when certain damages have been paid to or for a plaintiff, in order to prevent a double recovery. The statute provides that, when such otherwise-recoverable damages have been paid by a collateral source, those amounts should be offset except those for which a subrogation right has been asserted . Minn. Stat. § 548.251, subd. 2. We have explained that the two statutes-Minn. Stat. § 548.251 and Minn. Stat. § 65B.51 (2018)-can and should be reconciled, with the collateral-source statute providing procedures for implementing the offsets mandated by Minn. Stat. § 65B.51. Lee v. Hunt , 642 N.W.2d 57, 60 (Minn. App. 2002).

If it were not for the indemnity right against the insurer of a heavy commercial vehicle, the cost associated with operating heavy over-the-road trucks would be shifted to the consuming public which purchases private passenger automobile insurance. Smetak et al., supra , at ----. The indemnity right involves only the shifting of expense from one insurer to another, leaving any claim of the insured intact and unaffected by the indemnity right. Id. In furtherance of that goal, the indemnity claim may not be consolidated with the insured's claim for tort relief. Id.